# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ST. LOUIS MOTORSPORTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 4:17-CV-2694 PLC** |
| | ) | |
| GAY, JR., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Rudy Gay's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).[1] (ECF No. 21). Plaintiff St. Louis Motorsports, LLC ("STL Motorcars") opposes the motion, and the Court heard oral arguments on February 30, 2018. (ECF Nos. 25 & 45). For the reasons stated below, the Court grants the motion.[2]

### I.    Factual and Procedural Background

STL Motorcars filed this action for fraud and negligent misrepresentation in the Circuit Court of the County of St. Louis (ECF No. 5). Mr. Gay, with the consent of Defendant Pro Motorsports, removed the action to this Court. (ECF No. 2). The facts, as alleged in the petition, are as follows:

STL Motorcars is a Missouri limited liability company that buys, sells, trades, and repairs

---

[1] Because the Court grants Mr. Gay's motion to dismiss for lack of personal jurisdiction, it does not address his arguments that STL Motorcars' tort claims fail as a matter of law because: (1) "the economic loss doctrine bars a commercial purchaser's claims of fraud and negligent misrepresentation relating to the quality and character of the goods sold"; and (2) "in the absence of a fiduciary relationship, Pro Motors had no duty to disclose information in its commercial sale to Plaintiff." (ECF No. 21). The Court notes, however, that Defendant Pro Motorsport has filed a motion to dismiss for failure to state a claim on the basis of the economic loss doctrine (ECF No. 35), and that motion remains pending.

[2] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (ECF No. 28).

high-end, luxury vehicles.  (ECF No. 5 at ¶ 2).  Pro Motorsports, also a Missouri limited liability company, represents professional athletes, executives, and companies in transactions in the exotic and luxury car market.  (Id. at ¶ 4).  In November 2013, Pro Motorsports represented Mr. Gay, a professional basketball player, in the purchase of a 2013 Rolls Royce Phantom Coupe ("Phantom").  (Id. at ¶¶ 6, 9, 10).

In February 2016, Pro Motorsports, "acting as Mr. Gay's agent," offered to sell the Phantom back to STL Motorcars.  (Id. at ¶ 15).  Pro Motorsports assured STL Motorcars that the Phantom was in "perfect" and "like new" condition, and a March 2016 CarFax vehicle history report and warranty check revealed no accidents or damage to the vehicle.  (Id. at ¶¶ 16, 17). STL Motorcars repurchased the Phantom from Pro Motorsports on March 4, 2016 for $250,000.[3] (Id. at ¶19).

In April 2017, STL Motorcars obtained a new CarFax history report and warranty check, which revealed that, in July 2015, the Phantom sustained extensive damage to its undercarriage. (Id. at ¶¶ 20- 22).  STL Motorcars alleges that "[d]ue to the Phantom's damage history and Defendants' concealment and misrepresentations, STL Motorcars has been unable to sell the Phantom."  (Id. at ¶ 27).

STL Motorcars filed a two-count petition against Defendants Mr. Gay and Pro Motorsports alleging claims of fraud and negligent misrepresentation.  (Id.).  STL Motorcars asserts that Mr. Gay is subject to jurisdiction in Missouri because Pro Motorsports, a Missouri entity, "was acting as Mr. Gay's agent" when it sold STL Motorcars the Phantom.  (Id. at ¶¶ 5-7).  STL Motorcars alleged:  "Jurisdiction is proper in this Court pursuant to Mo. Rev. Stat. § 506.500 in that the parties transacted business within Missouri and because Defendants

---

[3] The parties do not dispute that the sale documents for the 2016 transaction list Pro Motorsports (and not Mr. Gay) as the seller of the Phantom.  See ECF No. 25 at 7.

committed tortious acts towards STL Motorcars within Missouri." (Id. at ¶ 7).

Mr. Gay moves to dismiss the case pursuant to Rule 12(b)(2), arguing that he is not subject to jurisdiction in Missouri because he was not a party to the transaction between STL Motorcars and Pro Motorsports, he has no connection to Missouri, and Pro Motorsports was not acting as his agent. (ECF No. 21). In regard to agency, Mr. Gay asserts that he does not have the agency relationship with Pro Motorsports necessary to establish contact with Missouri because: (1) Mr. Gay had no legal relationship with STL Motorcars that Pro Motorsport had the power to alter; and (2) Mr. Gay had no right to control the conduct of Pro Motorsports in its sale of the Phantom to STL Motorcars. (Id. at 8).

In response, STL Motorcars maintains that it pleaded sufficient facts to support a reasonable inference that Mr. Gay is subject to jurisdiction in Missouri. (ECF No. 25). More specifically, STL Motorcars states that: Mr. Gay contracted with one Missouri entity and authorized it to sell the Phantom to another Missouri entity; Mr. Gay owned and possessed the Phantom throughout the negotiations between STL Motorcars and Pro Motorsports; and Mr. Gay delivered the Phantom to STL Motorcars in St. Louis, Missouri. Additionally, STL Motorcars argues that Pro Motorsports was Mr. Gay's agent and, therefore, Pro Motorsports' acts or conduct may be the basis for jurisdiction over Mr. Gay.

In support of its memorandum in opposition to Mr. Gay's motion to dismiss, STL Motorcars submitted: a Declaration of Brian Tull; printouts from Pro Motorsports' website; and text messages exchanged between Mr. Tull and Mr. Lewis from January 26, 2016 through February 19, 2016. (ECF No. 25-1). In his declaration, Mr. Tull states:

- When Mr. Lewis contacted Mr. Tull seeking a bid on the Phantom, Mr. Lewis "informed me that he was working on behalf of Mr. Gay and had authority to

negotiate a sale price of the Phantom";

- Mr. Gay maintained "ownership and possession" of the Phantom throughout the negotiations;

- Based on Pro Motorsports' conduct and statements, Mr. Tull believed that Pro Motorsports "was in discussions with Mr. Gay throughout the negotiations" and did not have authority to act or agree to any terms without MR. Gay's approval;

- Mr. Gay only titled ownership of the Phantom to Pro Motorsports after STL Motorcars and Pro Motorsports agreed on a final sales price; and

- STL Motorcars received the Phantom in Missouri directly from Mr. Gay's personal residence in Florida.

(Id. at ¶¶ 10, 11, 13, 14, 16).

St. Louis Motorcars also provided text messages exchanged between Mr. Tull and Mr. Lewis relating to the sale of the Phantom. (ECF No. 25-1 at 80-98). The text messages reveal that, on January 26, 2016, Mr. Lewis texted Mr. Tull the following: "Need bid on Rudy [P]hantom he wants a [D]awn," along with the Phantom's VIN and mileage. Id at 78. Later that day, Mr. Tull responded, "Graham[4] put $250k on it," and Mr. Lewis replied "The car is yours…." (Id. at 80). On February 12, 2016, Mr. Lewis and Mr. Tull discussed the logistics of transporting the Phantom from Florida to Missouri, and Mr. Lewis asked, "[W]hen can you send the check[?] . . . . I have paid him on the car today so that is why I am asking when I can get my money back." (Id. at 83, 85).

In a text message dated February 16, 2016, Mr. Tull informed Mr. Lewis that a potential buyer found the Phantom listed on the Internet for a retail price of $259,000, which "[k]ills the

---

[4] Graham Hill is the principal and owner of STL Motorcars. (ECF No. 20-1 at 1).

market."  (Id. at 25-1 at 88).  Mr. Lewis responded that the Phantom "is in Rudy['s] garage . . . Rudy is driving it" and "[t]he guy that placed the ad never had [the Phantom]."  (Id. at 89-91). The following day, Mr. Lewis forwarded Mr. Tull several photographs of the Phantom taken in Mr. Gay's garage.  A "shipper invoice" reflected that Mr. Lewis shipped the Phantom to STL Motorcars on March 4, 2016.  (Id. at 99).

In Mr. Gay's reply to STL Motorcars' memorandum in opposition to his motion to dismiss, Mr. Gay emphasizes that STL Motorcars, as the party that relied upon the alleged authority of the agent, "has the burden of proof regarding both the fact of agency relationship and the scope of the agent's authority."  (ECF No. 29 at 5) (quoting Glen Martin Eng'g, Inc. v. Alan Dick & Co., No. 08-4109-CV-C-NKL, 2009 WL 1330810 (W.D.Mo. May 12, 2009)). According to Mr. Gay, STL Motorcars has failed to provide facts or evidence establishing any of the three elements of an agency relationship.  He further maintains that the additional declarations and exhibits STL Motorcars submitted in support of its opposition to dismissal demonstrate that Mr. Gay did not control Pro Motorsports' actions in the sale of the Phantom. (Id. at 6-8).  Finally, Mr. Gay asserts that STL Motorcars offers no evidence of apparent authority, as all of its evidence relates to actions between STL Motorcars and Pro Motorsports. (Id. at 8-9).

## II.    Legal Standard

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists.  Fastpath, Inc. v. Arbela Tech. Corp., 760 F.3d 816, 820 (8th Cir. 2014).  A plaintiff's prima facie showing "must be tested, not by pleadings alone, but by affidavits and exhibits supporting or opposing the motion."  K–V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir. 2011) (internal

quotation marks and citation omitted).  Although a court must view evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction.  Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., 646 F.3d 589, 592 (8th. Cir. 2011); Epps v. Stewart, 327 F.3d 642, 647 (8th. Cir. 2003).

### III.    Discussion

Mr. Gay argues that this Court lacks personal jurisdiction over him because he has no connection with Missouri and Pro Motorsports was not his agent.[5]  (ECF No. 22).   STL Motorcars contends that personal jurisdiction over Mr. Gay is proper under the Missouri long-arm statute and the Due Process Clause of the Fourteenth Amendment because:  (1) Mr. Gay has sufficient contacts with Missouri; and (2) the actions of Mr. Gay's agent, Pro Motorsports, also subject Mr. Gay to personal jurisdiction.  (ECF No. 25).

Personal jurisdiction over a defendant represents the power of a court to enter "a valid judgment imposing a personal obligation or duty in favor of the plaintiff."  Viasystems, 646 F.3d at 592 (quoting Kulko v. Superior Court of Cal., 436 U.S. 84, 91 (1978)).  "Personal jurisdiction can be specific or general."[6]  Id. at 593.  "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state...."  Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc., 702 F.3d 472, 474-75 (8th Cir. 2012) (quoting Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1091 (8th Cir. 2008)).  In a diversity action, a federal court may exercise specific personal jurisdiction "only if authorized by the

---

[5] There is no dispute that Mr. Gay had no direct dealings with STL Motorcars and the sale documents for the Phantom list the parties to the transaction as STL Motorcars and Pro Motorsports.  (See ECF No. 25 at 7).

[6] STL Motorcars does not argue that this Court has general personal jurisdiction over Mr. Gay.

forum state's long-arm statute[7] and permitted by the Due Process Clause of the Fourteenth Amendment." Id. (quoting Viasystems, 646 F.3d at 593).

"'[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause,' this court considers 'whether the assertion of personal jurisdiction would violate' due process."[8] Aly v. Hanzada for Imports & Export Co., LTD, 864 F.3d 844, 849 (8th Cir. 2017) (quoting Eagle Tech. v. Expander Americas, Inc., 783 F.3d 1131, 1136 (8th Cir. 2015)). Due process requires "'minimum contacts between a defendant and the forum state' so that 'jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice.'" Id. (quoting Downing v. Goldman Phipps, PLLC, 764 F.3d 906, 912 (8th Cir. 2014) (internal quotation omitted)). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state, Burger King Corp. v. Rudzewicz, 471 U .S. 462, 482 (1985), to such a degree that it 'should reasonably anticipate being haled into court there.'" Viasystems, 646 F.3d at 594 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

---

[7] Relevant to this case, Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business, make a contract, or commit a tort within the state. Viasystems, 646 F.3d at 593 (citing Mo. Rev. Stat. § 506.500.1). "These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause." Id. (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984)).

[8] "[G]iven that the Missouri long-arm statute authorizes personal jurisdiction to the extent permissible under the Due Process, a finding that a plaintiff has *failed* to establish that personal jurisdiction comports with the Due Process Clause is dispositive in Missouri cases, obviating the necessity of a long-arm inquiry." Flame v. Hudson, Case No. 4:14-CV-1183 HEA, (ECF No. 79 at 21) (E.D.Mo. July 23, 2015) (emphasis in original) (citing Eagle Tech, 783 F.3d at 1136). "By contrast, a court's finding that it *does* have personal jurisdiction over a non-resident defendant requires analysis of *both* the long-arm statute and the Due Process Clause." Id. (emphasis in original).

To determine the sufficiency of a nonresident's contact with the forum state, the court considers: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Dairy Farmers, 702 F.3d at 477 (quoting K-V Pharm., 648 F.3d at 592). "Telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process[.]" Eagle Tech., 783 F.3d at 1137.

STL Motorcars focuses its personal jurisdiction argument on an agency theory, stating that the Court may exercise personal jurisdiction over Mr. Gay through the acts of his agent, Pro Motorsports. Specifically, STL Motorcars asserts that Mr. Gay is subject to personal jurisdiction in this Court because he "contracted with one Missouri entity, Pro Motorsports, and authorized it to negotiate and sell his Phantom to another Missouri entity, STL Motorcars."[9] (Id. at 7).

"Although a court may exercise personal jurisdiction over a defendant through the acts of his agent, a party who relies upon the authority of the agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority." Romak USA, Inc. v. Rich, 384 F.3d 979, 985 (8th Cir. 2004). A party seeking to demonstrate the existence of an agency relationship must establish that: (1) the principal has "the right to control the conduct of the agent with respect to matter entrusted to the agent"; (2) the agent is a fiduciary of the principal; and (3) the agent is "able to alter legal relationships between the principal and a third party." State ex rel. McDonald's Corp v. Midkiff, 226 S.W.3d 119, 124 (Mo. banc 2007). See

---

[9] To the extent that STL Motorcars suggests that Mr. Gay's alleged contract with Pro Motorsports, a Missouri entity, subjects Mr. Gay to this Court's personal jurisdiction, the Court notes that "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state." Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 313 (8th Cir. 1982) (quotation omitted).

also Lefkowitz v. Valobra of Texas, No. 4:14-CV-554 NAB, 2014 WL 2739281, at *4 (E.D.Mo. June 17, 2014). "[E]xpress authority and apparent authority arise from the acts of the principal, not the alleged agent." Romak, 384 F.3d at 985 (citing United Mo. Bank v. Beard, 877 S.W.2d 237, 240-41 (Mo.App. 1994)).

In support of its position that Pro Motorsports was Mr. Gay's agent, STL Motorcars relies on allegations in its complaint that: (1) Mr. Gay authorized Pro Motorsports "to enter into and alter legal relations with STL Motorcars"; (2) Pro Motorsports "was Mr. Gay's fiduciary with respect to its agency"; and (3) Mr. Gay "controlled Pro Motorsports' conduct in its dealings with STL Motorcars regarding the Phantom." (ECF No. 25 at 10). STL Motorcars states that the existence of an agency relationship "is buttressed by the fact that this is the precise authority Gay provided Pro Motorsports in 2013 when he first purchased the Phantom from STL Motorcars." (Id.). Additionally, STL Motorcars submits printouts from Pro Motorsports' website, as well as the affidavit of Mr. Tull, who stated that, when Mr. Lewis contacted him about the Phantom, Mr. Lewis represented that "he was working on behalf of Mr. Gay and had authority to negotiate a sale price of the Phantom." (ECF No. 25-1 at ¶ 10).

STL Motorcars provides no evidence of an express agency relationship between Pro Motorsport and Mr. Gay. STL Motorcars' conclusory statements to the effect that Pro Motorsports was Mr. Gay's agent do not satisfy its burden to demonstrate agency.[10] See, e.g.,

_____

[10] STL Motorcars requests the court "grant it limited discovery on the issue" of jurisdiction if it finds that STL Motorcars presented insufficient evidence of an agency agreement between Mr. Gay and Pro Motorsports. (ECF No. 25 at 11 n.3). "The decision whether to grant jurisdictional discovery in a case is left to the trial court's sound discretion." Clockwork IP, LLC v. Clearview Plumbing & Heating Ltd., 127 F.Supp.3d 1020, 1030 (E.D.Mo. 2015) (quotation omitted). "Numerous cases hold that district courts have the discretion to deny jurisdictional discovery where . . . the complaint fails to make a prima facie case of personal jurisdiction." Id. Because STL Motorcars' petition did not make a prima facie showing of personal jurisdiction, the Court denies its request for jurisdictional discovery. See, e.g., id.

Affordable Communities of Mo. v. Fed. Nat. Mortg. Ass'n, 714 F.3d 1069, 1074 (8th Cir. 2013) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (finding unpersuasive the plaintiff's use of "labels and conclusions" to establish the defendants' agent-principal relationship). See also Christenson Transp., Inc. v. Samsung Intern. Inc., No. 04-3538-CV-S-RED, 2005 WL 1356151, at *2 (W.D.Mo. June 7, 2005) ("The Court finds that in this case Plaintiff has simply alleged in a conclusory manner the agency relationship between the Defendants.").

In addition to actual authority, STL Motorcars asserts that Pro Motorsports had apparent authority to sell STL Motorcars the Phantom on Mr. Gay's behalf. "'Apparent authority' exists when a principal, either by its acts or representations, has led third persons to believe authority has been conferred upon an agent." Lynch v Helm Plumbing & Elec. Contractors, Inc., 108 S.W.3d 657, 660 (Mo.App.W.D. 2002). "Generally, any conduct by the principal which, if reasonably interpreted, would cause a third person to believe that the principals consents to the acts of the agent is sufficient to create apparent authority." Shiplet v. Copeland, 450 S.W.3d 433, 443 (Mo.App.W.D. 2014) (quoting Stitt v. Raytown Sports Ass'n, Inc., 961 S.W.2d 927, 932 (Mo.App.W.D.1998)).

In support of its position that Pro Motorsports had apparent authority to sell the Phantom on Mr. Gay's behalf, STL Motorcars points to Pro Motorsports' statements and actions. However, under Missouri law, apparent agency must be based on the actions of the principal, in this case, Mr. Gay. Move Merch, LLC v. Amaru/AWA Merch., Inc., No. 4:14-CV-878 CAS, 2015 WL 927468, at *4 (E.D.Mo. March 4, 2015). STL Motorcars' pleadings contain no allegations that Mr. Gay, by either actions or words, caused STL Motorcars to believe that Pro Motorsports was his agent. See, e.g., Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,

65 F.3d 1427, 1433 (8th Cir. 1995).

Moreover, STL Motorcars' declarations and exhibits contradict its assertion that it relied on Pro Motorsports' apparent authority to act on behalf of Mr. Gay. In Mr. Tull and Mr. Lewis's text-message conversation about the sale of the Phantom, Mr. Lewis never suggested that he was negotiating on Mr. Gay's behalf. (ECF No. 25-1). While Mr. Tull was clearly conveying information to and from Mr. Hill (i.e., "Sent it to my boss," "[Mr. Hill] put $250K on it," "Ok I'll let my boss know"), Mr. Lewis never suggested a need to communicate with or obtain Mr. Gay's approval as to any terms of the agreement.[11] (Id. at 79, 80, 85). Even more tellingly, Mr. Lewis asked Mr. Tull, "when can you send the check[?] . . . I have paid [Mr. Gay] on the car today so that is why I am asking when I can get my money back[.]" (Id. at 83, 85). When Mr. Tull expressed doubts about buying the Phantom, Mr. Lewis responded that he had already "paid for the car based on the bid you guys gave me." (Id. at 95).

STL Motorcars suggests in passing that federal courts in Missouri have specific personal jurisdiction over Mr. Gay because he "made misrepresentations to a Missouri entity and delivered the subject of the transaction to Missouri." (ECF No. 25 at 9). Due process allows a state to assert personal jurisdiction over a defendant based on the in-state effects of the defendant's extraterritorial tortious acts only if those acts: "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered – and which the defendant knew was likely to be suffered – [in the forum state]." Viasystems, Inc., 646 F.3d at 594 (quoting Johnson, 614 F.3d at 796) (alteration in original). Here, the fact that the harm from the alleged fraud and negligent misrepresentation was felt in

---

[11] The only time Mr. Lewis appeared to have communicated with Mr. Gay was to address STL Motorcars' concerns because a potential purchaser found the car listed for sale online. (ECF No. 25-1 at 89). At that point, Mr. Lewis "talked to [Mr. Gay]" to confirm that the Phantom was in Mr. Gay's possession and "the guy that placed the ad never had [the Phantom]." (Id. at 89, 91).

Missouri "is insufficient for the Court to exercise jurisdiction over [Mr. Gay] where there is nothing to support [his] actions being purposefully directed at Missouri citizens." <u>Gray v. Hudson</u>, No. 14-CV-1183 HEA, 2015 WL 4488143, at *6 (E.D.Mo. July 23, 2015); <u>see also</u> <u>Clockwork IP</u>, 127 F.Supp.3d at 1027-28 ("[T]here is no evidence that Defendants directly targeted any action at Missouri, knowing it would be felt here.").

Nor does the fact that Mr. Gay delivered the Phantom to Missouri justify imposing personal jurisdiction. <u>See, e.g.</u>, <u>Scullin Steel</u>, 676 F.2d at 313-14. "The use of interstate facilities (telephone, the mail) the making of payments, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." <u>Id.</u> (district court lacked jurisdiction over a South Carolina corporation even though the corporation contracted with a St. Louis factory to manufacture products in Missouri, delivered products to the St. Louis factory, and sent payment or services to the factory).

### IV.    Conclusion

STL Motorcars has not carried its burden of establishing a prima facie case that federal courts in Missouri may properly assert personal jurisdiction over Mr. Gay. As a result, the exercise of personal jurisdiction over Mr. Gay is not consistent with the requirements of the Due Process Clause.

Accordingly,

**IT IS HEREBY ORDERED** that Mr. Gay's motion to dismiss for lack of personal jurisdiction (ECF No. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that STL Motorcars' complaint against Mr. Gay is dismissed for lack of personal jurisdiction.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of February, 2018